1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10

11   ELIZABETH A. GOMBERG,              )      NO. EDCV 04-888 MAN
                                        )
12                  Plaintiff,          )
                                        )      MEMORANDUM OPINION AND ORDER
13          v.                          )
                                        )
14                                      )
     JO ANNE BARNHART,                  )
15   Commissioner of the               )
     Social Security Administration,    )
16                                      )
                    Defendant.          )
17   _____)

18       Plaintiff filed a Complaint on July 22, 2004, seeking review of the

19   denial  by  the  Social  Security  Commissioner  ("Commissioner")  of

20   disability insurance benefits ("DIB").  On August 23, 2004, the parties

21   filed a "Consent to Proceed Before a United States Magistrate Judge,"

22   pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint Stipulation

23   on May 17, 2005, in which:  Plaintiff seeks an order reversing the

24   Commissioner's  decision  and  awarding  benefits  or,  alternatively,

25   remanding the case to the Commissioner with directions; and Defendant

26   requests that the Commissioner's decision be affirmed.  The Court has

27   taken  the  parties'  Joint  Stipulation  under  submission  without  oral

28   argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed her current application for DIB on December 20, 1996. (Administrative Record ("A.R.") 233-36.) Plaintiff claims to have been disabled since April 27, 1993, due to chronic fatigue, fibromyalgia, asthma, hypothyroidism, and depression.[1] (A.R. 233, 388.) She has past relevant experience as an administrative assistant, secretary, and administrative clerk. (A.R. 24, 93.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On February 4, 1999, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge ("ALJ") H. Steven New. (A.R. 47-103.) On February 16, 1999, the ALJ denied Plaintiff's request for benefits, and the Appeals Council subsequently affirmed the ALJ's decision. (A.R. 23-33, 6-7.)

Plaintiff sought review of that decision in this Court (Case No. CV 01-12-5 MAN). On February 28, 2003, this Court remanded the case for further proceedings on three grounds. (A.R. 466-83.)

First, the Court found that the ALJ had improperly rejected the opinions of Dr. Roger Hall, Plaintiff's treating physician, and Dr.

---

1    Plaintiff previously filed an application for disability benefits on January 4, 1994, which was denied on June 13, 1994. (A.R. 104-07, 120-23.) No appeal was taken from this denial, and the ALJ found that the period prior to June 13, 1994, was precluded from further review under the doctrine of *res judicata*. (A.R. 23-24.)

Gilbert Gelfand, a physician who examined Plaintiff on September 14, 1995, stating:

> By requiring a diagnoses that is not based on "[Plaintiff's] own subjective complaints" (A.R. 25), the ALJ failed to recognize that the assessment of CFS is, of necessity, largely based on Plaintiff's history, which she reported to her physician. Thus, in rejecting the diagnoses of Dr. Hall and Dr. Gelfand, the ALJ did not apply the correct standards in evaluating CFS. *See* Social Security Ruling 99-2p.

> Accordingly, the ALJ's improper rejection of the opinions of Dr. Hall and Dr. Gelfand constitutes error.

(A.R. 476.)

Second, with respect to Dr. Nader Oskoolar, a treating psychiatrist who provided a May 15, 2001 evaluation, the Court directed the ALJ to "attempt to obtain all records from Dr. Oskoolar to assist in the reevaluation of the combined effects of Plaintiff's mental and physical impairments."[2] (A.R. 478.)

Third, the Court directed, as follows:

---

2   The Court notes that Dr. Oskoolar's name has other various spellings in the record, such as:   Dr. Oskoollar (A.R. 383), Dr. Oekoolar (A.R. 6, 8), and Dr. Oskooilar (A.R. 582).

3

[O]n remand, the ALJ should specifically reject [Plaintiff's claimed limitations of crying spells and her need to take daily naps], or he should provide them in a new hypothetical question to the vocational expert.

. . . .

[I]n view of the potential incompleteness of the hypothetical on which the vocational expert's opinion is based, this Court cannot confirm that the opinion of the vocational expert ha evidentiary value.  The ALJ may need to provide an additional hypothetical to the vocational expert after reevaluating Plaintiff's mental and physical impairments, as directed above, which reflects the full extent of Plaintiff's impairments and limitations.

(A.R. 480-81.)

On January 28, 2004, an administrative hearing was held before ALJ Helen Hesse.  (A.R. 412-42.)  In a March 25, 2004 decision, ALJ Hesse again denied Plaintiff's request for DIB.  (A.R. 387-97.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In her March 25, 2004 decision, the ALJ found that Plaintiff was insured for benefits through March 31, 1999, and had not engaged in substantial gainful activity since her alleged onset date.  (A.R. 395.)  The ALJ found that Plaintiff had "severe" impairments (consisting of

4

"chronic fatigue syndrome, probable low level fibromyalgia," and a history of asthma and depression, and that she also had hypertension, elevated cholesterol, and hypothyroidism, which were well-controlled with medication), but that such impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.[3]  (A.R. 395-96.)

The ALJ found that Plaintiff's allegations regarding her limitations were not totally credible, and provided detailed, clear and convincing reasons for that conclusion.  (A.R. 396.)  In so doing, the ALJ noted that:  "[Plaintiff] testified at the current hearing that she was able to take care of her spouse, who is disabled with bipolar disorder, as well as her four children, until they left home in 1999."[4] (A.R. 341, 424-27.)

In describing Plaintiff's residual functional capacity for the relevant time period, the ALJ stated:

> [Plaintiff] has the residual functional capacity for the full
> range of light work with lifting and carrying 10 pounds
> frequently and 20 pounds occasionally, and sitting for six
> hours, and standing/walking for six hours out of an eight hour
> workday with position changes at normal workday breaks.

---

3    In her March 25, 2004 decision, the ALJ incorporated by reference the discussion of the medical evidence in the ALJ's February 16, 1999 decision.  (A.R. 389.)

4    *See, e.g.*, Rollins v. Masssanari, 261 F.3d 853, 857 (9th Cir. 2001)(ALJ properly rejected the claimant's alleged disabling pain based on her testimony that she single-handedly cared for two young children and her household while her husband worked long hours six days a week).

1   [Plaintiff] is unable to climb ladders or scaffolds and
2   perform activities requiring balancing, but can occasionally
3   climb stairs, stoop, kneel, crouch or crawl, and frequently
4   bend.  She can frequently reach in all directions, including
5   overhead.  [Plaintiff] is restricted from working at
6   unprotected heights, and from being around dangerous or fast
7   moving machinery, and is restricted from concentrated exposure
8   to temperature extremes, wetness/humidity, and dust, fumes and
9   gases.  Additionally, [Plaintiff] is limited to simple
10  repetitive tasks in a habituated work setting which does not
11  require hypervigilance or to be in charge of safety
12  operations.  She is limited to an object oriented environment
13  not requiring intense interpersonal interactions, and with
14  work at a moderate pace not requiring high production, quota
15  or rapid assembly line work.[5]

16

17  (A.R. 396.)

18

19      The ALJ found that Plaintiff was an individual "closely approaching
20  advanced age" as of the expiration of her insured status and a younger
21  individual as of her alleged onset date pursuant to 20 C.F.R. §
22  404.1563, and has a "high school (or high school equivalent) education"
23  pursuant to 20 C.F.R. § 404.1564.  (*Id*.)  The ALJ further found that
24  Plaintiff could not perform her past relevant work pursuant to 20 C.F.R.
25  § 404.1565, and had no transferable skills pursuant to 20 C.F.R. §

26  ─────────────────────

27      5   This refers to work at the "light" exertional level, which is
    defined as:  "lifting no more than 20 pounds at a time with frequent
28  lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§
    404.1567(b), 416.967(b).

404.1568.   (*Id.*)   Relying upon Medical-Vocational Rules 202.14 and 202.21 as a framework and the testimony of a vocational expert, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could have performed, such as the jobs of an assembler, sales attendant, and maid.[6]  (*Id.*)  Thus, the ALJ found that Plaintiff was not under a disability at or prior to the expiration of her insured status on March 31, 1999.  (A.R. 397.)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of

---

6    Under Rule 202.21, a person who is limited to "light" work, a "younger individual," a "high school graduate or more," and "skilled or semi-skilled" with no "transferable" skills, is not disabled.   Under Rule 202.14,   a claimant who is limited to "light" work, "closely approaching advanced age," with a "high school education," and "no transferable skills," is "not disabled.   20 C.F.R. Pt. 220, App. 2.

1  Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also*

2  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is

3  responsible for determining credibility, resolving conflicts in medical

4  testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d

5  1035, 1039-40 (9th Cir. 1995).   This Court must uphold the

6  Commissioner's decision if it is supported by substantial evidence and

7  free from legal error, even when the record reasonably supports more

8  than one rational interpretation of the evidence. *Id.* at 1041; *see also*

9  Morgan v. Commissioner of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th

10 Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

11

12                            **DISCUSSION**

13

14     Plaintiff raises three issues in the Joint Stipulation.  First,

15 Plaintiff contends that the ALJ did not properly consider the April 27,

16 1994 Evaluation Form For Mental Disorders completed by Dr. Helen

17 Pensanti, one of Plaintiff's treating physicians. (Joint Stip. at 3-4.)

18 Second, Plaintiff contends that the ALJ failed to evaluate properly her

19 claimed memory loss, as noted by Dr. Pensanti, Dr. Ed Case, and Dr.

20 Oskoolar. (Joint Stip. at 3, 4-5.)   Third, Plaintiff contends that the

21 ALJ failed to consider properly the opinions submitted by Dr. Hall and

22 Dr. Gelfand, her treating physicians.[7]  (Joint Stip. 7-8.)

23

24     In this case, to prove her disability during the  time period at

25 issue, Plaintiff had to show that she became disabled prior to her last

26

27        7   As Plaintiff's first and third issues pertain to the ALJ's

28 consideration of opinions provided by Plaintiff's treating physicians,
   the Court considers them together in Section A, below.

                                    8

insured date, March 31, 1999. *See* 42 U.S.C. §§ 401, 423 (d)(3) and (5); 20 C.F.R. §§ 404.1512, 404.1513; <u>Flaten</u>, 44 F.3d at 1462 (a claimant cannot be found disabled unless he can adduce acceptable medical evidence that pertains to the period during which he was insured); <u>Macri v. Chater</u>, 93 F.3d 540, 543 (9th Cir. 1996).

**A.   The ALJ Properly Considered The Opinions Of Dr. Hall, Dr. Gelfand, And Dr. Pensanti.**

Ordinarily, the opinions of a treating physician should be given great, if not controlling, weight. *See* Social Security Ruling 96-2p. When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); *see also* <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating physicians' opinions and relying upon Social Security examiners' opinions in finding that claimant's CFS had not rendered her disabled). Broad and vague reasons will not suffice for rejecting the treating physician's opinion. <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).

Plaintiff contends that the ALJ erred by partially rejecting Dr. Hall's September 11, 1998 findings as "seemingly restatements of [Plaintiff's] own assertions." (Joint Stip. at 7, citing A.R. 393.) In addition, Plaintiff contends that the ALJ erred in rejecting Dr. Gelfand's March 14, 1995 opinion on the ground that "[h]is statements of disability overall suggested that he relied primarily on [Plaintiff's]

subjective complaints in the absence of significant objective findings." (Joint Stip. at 8, citing A.R. 393.)  Plaintiff further contends that the ALJ improperly failed to address the opinions and diagnoses provided by Dr. Pensanti.  (Joint Stip. at 3-4.)

1.  **Dr. Hall's September 11, 1998 Opinion**

On September 11, 1998, Dr. Hall listed Plaintiff's impairments as: hyperlipidemia, anxiety and panic disorder, chronic severe depression, chronic fatigue syndrome, hypothyroidism, migraine headaches, and hypertension, and he noted that: "[Plaintiff] has several medical conditions which I believe make her totally and completely disabled and unable to have any type of gainful employment." (A.R. 359.)  He further observed that:

> [T]he severe depression and her severe chronic fatigue syndrome are totally debilitating and completely control her daily life activities. [Plaintiff] finds it extremely difficult to get out of bed and to do any type of physical activity.  She has difficulty with concentration and motor activity.  Furthermore, she is not able to control her emotions on a regular basis.

(*Id.*)

In evaluating Dr. Hall's opinions, the ALJ stated:

> The Administrative Law Judge has considered the various

10

assessments submitted by Dr. Hall, who on July 29, 1996 expressed the opinion that [Plaintiff] was physically incapable of performing the demands of even sedentary work activity, and that she had severe limitations from a psychological standpoint (Ex. 9F pg 10).  On a subsequent physical capacities assessment dated September 23, 1997 limitations were noted which included lifting and carrying weights in excess of 5 pounds, sitting for longer than three hours a day, and standing/walking for more than one hour a day (Ex 9F pg 1).  In a letter dated September 11, 1998 Dr. Hall opined that [Plaintiff] was completely and totally chronically disabled due to severe depression and chronic fatigue syndrome (Ex 10F).  The undersigned is unable to accept Dr. Hall's expression of disability for several reasons.  First, his references to [Plaintiff] finding it extremely difficult to get out of bed to do any physical activity and her difficulty with concentration and motor activity, are seemingly restatements of [Plaintiff's] own assertions to this physician.  Further, *the undersigned notes that on his initial meeting with [Plaintiff] at which time [Plaintiff] had apparently expressed the desire for disability (Ex 5F pg 10), Dr. Hall complied by completing an attending [physician's] statement finding [Plaintiff] in essence as being totally disabled, which suggests an accommodation to her (Ex 9F pg 10).*  Moreover, it seems clear from his clinical treatment notes that Dr. Hall allowed [Plaintiff's] failure to follow treatment to continue, even while expressing the opinion that she was totally disabled.

11

(A.R. 392-93; emphasis added.)


Statements of disability by a treating physician, such as Dr. Hall's statements that Plaintiff was "totally and completely disabled and unable to have any type of gainful employment," are not binding on the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(6)(e)(1) and 416.927(d)(6)(e)(1)("We [the Social Security Commissioner and her designees] are responsible for making the determination or decision about whether you meet the statutory definition of disability"); <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1985)("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ."). In addition, to the extent the ALJ rejected Dr. Hall's statements regarding Plaintiff's "difficulties" in his September 11, 1998 opinion of disability, the ALJ's interpretation of such statements was not unreasonable. Dr. Hall had no direct knowledge regarding Plaintiff's alleged ability to get out of bed in the morning. Further, there does not appear to be any objective medical basis on which Dr. Hall relies in assessing Plaintiff's limitations pertaining to concentration and motor skills; thus, these limitations also appear to be based solely on Plaintiff's subjective statements.[8] <u>Andrews</u>, 53 F.3d

---

[8]    The Court previously found that the ALJ's rejection in the February 13, 1999 decision of the diagnosis of chronic fatigue syndrome by Dr. Hall and Dr. Gelfand on the sole ground that it was improperly based on Plaintiff's subjective complaints was error, in view of the nature of chronic fatigue syndrome and Social Security Ruling 99-2p. However, in the ALJ's most recent decision, dated March 25, 2004, the ALJ did not err in discrediting Dr. Hall's observations regarding Plaintiff's extreme limitations as improperly based on Plaintiff's subjective complaints, which were partially discredited (and not disputed by Plaintiff), as well as for other specific and legitimate reasons, as discussed below. *See* <u>Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992)(ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief, and unsupported by clinical findings); *see also* <u>Fair v. Bowen</u>, 885 F.2d 597,

at 1041 (court must uphold the Commissioner's decision even if the record could reasonably be interpreted in more than one way).

Moreover, as the ALJ pointed out,[9] Dr. Hall, as well as Plaintiff's other treating physicians, consistently observed that Plaintiff failed to avail herself of treatment available to her and failed to comply with

605 (9th Cir.1989) (holding that physician's opinion may be disregarded if it is based on subjective complaints that have already been discredited).

9     The ALJ described the evidence regarding Plaintiff's non-compliance with treatment recommended by her physicians, stating:

It must also be noted that there is significant evidence of non-compliance on the part of [Plaintiff] to recommended medical treatment which has included exercise, a controlled daily schedule, diet, appointments with a psychiatrist, and follow up with a chronic fatigue support group, with no apparent good reason, even though an overview of the clinical records do reflect adherence to treatment as being beneficial (Ex 5F).  For instance, on October 27, 1995, [Plaintiff's] mood was described as being stable with Paxil (Ex 5F pg 14). On March 6, 1997 [Plaintiff] reported that she sometimes felt invigorated after doing exercise (Ex 5F pg 5).  On May 27, 1997 Dr. Hall noted that [Plaintiff] had started Prozac, and that she was doing better, sleeping better and had more energy and was much more active and going to counseling (Ex 5F pg 4). By September 23, 1997 Dr. Hall noted [Plaintiff's] statements that she was feeling better; that she was going to see a new counselor; that her sleep pattern continued to improve and that she had more energy (Ex 5F pg 2).  Clinical treatment records dated October 1999 from the Riverside County Department of Mental Health reflected a good compliance with Prozac; that [Plaintiff] was doing and feeling better; that her mood had improved; that tearfulness had decreased; and that depression was better with compliance to medication (Ex 17F).  Records documented some waxing and waning and exacerbations of symptoms.  However, on those occasions, it was noted that [Plaintiff] had been having a lot of marital problems (Ex 5F pg 3), that she had stopped counseling (Ex 5F pg 8), that she was not exercising or eating properly, or that she had run out of medication (Ex 5F pgs 6, 7, 17F). Moreover, the clinical treatment records suggested little motivation for getting better (Ex 5F pgs. 4, 6).

(A.R. 391-92.)

13

instructions regarding diet, sleep, and exercise, which would have
improved her fatigue and depression.[10]          *See* 20 C.F.R. §

_____

    10   *See* A.R. 306 -- Dr. Hall's August 26, 1997 progress note
stating that Plaintiff and he discussed counselling and proper sleep
habits and that:  "I again stress[ed] the need to get help from [the]
Chronic Fatigue Syndrome Society to be educated about her condition";
A.R. 307 -- Dr. Hall's May 27, 1997 progress note:  directing Plaintiff
to "[f]ollow the regimen that I have outlined in the past regarding
proper sleep/wake cycle, diet, vitamin intake, exercise program, [and]
counseling"; noting that Plaintiff "does not seem to care about" his
recommended weight-reducing diet; observing that she needs to seek
information about her condition, but that "[s]he does not seem very
interested in this either;" and noting that "I have talked about the
need for self motivation to continue to improve her overall condition";
A.R. 308 -- Dr. Hall's March 6, 1997 progress note:  indicating that he
advised her to call a toll-free number regarding chronic fatigue
syndrome, but that "[s]he has never done this as long as I have
recommended it"; advising her about a proper sleep and exercise program
and stressing to her and her husband that "many of the recommendations
that I have been making month after month she has yet to do, therefore,
I do not expect her to improve much"; A.R. 309 -- Dr. Hall's February 4,
1997 progress note:  indicating that Plaintiff still had not pursued
any chronic fatigue syndrome support groups or information that he had
given her twice in the past; noting that she did not want to see a
psychiatrist when he suggested it; and advising that she "must do the
things I have asked her to do now on several occasions in order to feel
any improvement"; A.R. 310 -- Dr. Hall's January 6, 1997 progress note
indicating that he "[a]gain stressed [the] need for [Plaintiff] to
follow my directions regarding physical activity, dealing with her
depression and chronic fatigue syndrome if she is to get better"; A.R.
313 -- Dr. Hall's July 29, 1996 progress note indicating that he
"[d]iscussed very much the need for exercise and proper diet [and to
force] herself to try to improve."

    *See also* A.R. 315 -- Lyda Ali, P.A.'s April 23, 1996 progress
note indicating that Plaintiff was not following her recommended diet;
A.R. 319 -- Dr. Donald Harman's April 3, 1995 progress note indicating
that Plaintiff "refuses to see the psychiatrist at this time"; A.R. 577
-- Dr. Gary Ham's September 2, 2002 Client Care Plan recommending that
Plaintiff "comply with medication regime [and] attend group and/or
individual therapy"; A.R. 585 -- Dr. Ham's March 1, 2002 Client Care
Plan with the same notation; 596 -- Dr. Ham's September 3, 2001 Client
Care Plan with the same notation; A.R. 59, 61 -- testimony at the
February 16, 1999 hearing by Dr. Jocelyn Bailey, the non-examining
medical expert, that the record showed that Plaintiff had not been
compliant with taking her medications; A.R. 76-79 -- Plaintiff's
testimony that Dr. Hall had recommended that she join a chronic fatigue
support group and lose weight, but she did not agree with his
recommendations; A.R. 82-83 -- Plaintiff's testimony that she stopped
seeking counseling in 1998, because she could not afford it but did not
seek any public mental health treatment or free counseling that might be
available to her.

404.1530b(B)(providing that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled"); see also Smolen, 80 F.3d at 1284 (ALJ may consider a claimant's compliance with her prescribed treatment in assessing the severity of a claimant's symptoms); Lewis v. Apfel, 236 F.3d 503, 513-14 (9th Cir. 2001)(ALJ properly rejected a treating physician's letter that the claimant's seizures had not been fully controlled where other evidence in the record suggested that the claimant had not consistently complied with his treatment regime).   Accordingly, in view of the repeated observations regarding Plaintiff's lack of compliance with medical directives, the ALJ's rejection of Dr. Hall's opinion regarding Plaintiff's limitations was based on specific and legitimate reasons.

**2.   Dr. Gelfand's March 14, 1995 Opinion**

In a September 14, 1995 report, Dr. Gelfand, who examined Plaintiff in connection with her workers' compensation benefits, diagnosed Plaintiff with chronic fatigue and possible chronic fatigue syndrome, probable low level fibromyalgia, possible major depression, and hypothyroidism, and observed that "[a]t this point in time, I think it is impossible to believe that [Plaintiff] is capable of any work, now or in the foreseeable future." (A.R. 379-80.)  However, Dr. Gelfand noted that Plaintiff was a "very poor historian"; "[i]t was extremely difficult to obtain a coherent history from [her]"; and he had "received no other medical records, laboratory values or x-rays to review." (A.R. 377, 379, 381.)  Dr. Gelfand further noted that Plaintiff's "[m]ajor problem [was] her depression," which was "the largest cause of her symptomatology," but that he was "not qualified to diagnose major

depressions" and she "should be at least evaluated by a psychiatrist as opposed to a lay therapist."  (A.R. 379-80.)

In evaluating Dr. Gelfand's opinion, the ALJ stated:

> [T]he functional assessment as submitted by Dr. Gelfand under Exhibit 13 that [Plaintiff] was incapable of performing any work activity cannot be found convincing, especially considering that he felt [Plaintiff's] major restriction appeared to be psychiatric in nature, i.e., major depression, while also acknowledging that he felt unqualified to diagnose major depression.  It must also be noted that Dr. Gelfand specifically indicated that he did not review other medical records, laboratory values or X-rays, in formulating his opinion.  Moreover, his opinion cannot be afforded the weight of a treating physician; he saw [Plaintiff] for a one-time evaluation.  His statements of disability overall suggested that he relied primarily on [Plaintiff's] subjective complaints in the absence of significant objective findings.  While it is acknowledged that the nature of [Plaintiff's] impairments are by necessity largely predicated on subjective complaints, the undersigned cannot find [Plaintiff's] subjective allegations credible as to warrant limitations based solely on her statements for the reasons as previously stated herein.

(A.R. 393.)

16

As with the ALJ's rejection of Dr. Hall's statements regarding Plaintiff's disability, the ALJ's rejection of Dr. Gelfand's opinion that Plaintiff was incapable of work was not error. *See* 20 C.F.R. §§ 404.1527(d)(6)(e)(1) and 416.927(d)(6)(e)(1); <u>Nyman</u>, 779 F.2d at 531. Furthermore, as the ALJ recognized, Dr. Gelfand's opinion regarding Plaintiff's limitations was flawed in that it was critically inconsistent; specifically, Dr. Gelfand found that Plaintiff was primarily disabled by depression and unable to work, but also conceded that he was unable to evaluate her primary impairment, *i.e.*, her depression. *See* <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001)(ALJ provided specific and legitimate reasons for rejecting a treating doctor's opinion, as that opinion was internally inconsistent); *see also* <u>Young v. Heckler</u>, 803 F.2d 963, 968 (9th Cir. 1986)(treating doctor's conclusory opinion that claimant was disabled was properly rejected by the ALJ when it was internally inconsistent and not consistent with doctor's prior medical reports).

While an examining physician's statements may constitute substantial evidence of a claimant's residual functional capacity, Dr. Gelfand's opinions were not based on any review of medical records, clinical findings, or objective testing, as the ALJ also appropriately recognized. *Cf.* <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)(ALJ appropriately relied upon the opinion of an examining physician, who grounded his opinion as to the claimant's physical impairments on objective findings); <u>Miller v. Heckler</u>, 770 F.2d 845, 948 (9th Cir. 1985)(ALJ properly adopted the opinion of an examining physician whose findings rested on independent clinical findings)(quoting <u>Allen v. Heckler</u>, 749 F.2d 577, 579 (9th Cir.

1984)("[T]o the extent that [the nontreating physician's] opinion rests
on objective clinical tests, it must be viewed as substantial evidence
that [the claimant] is no longer disabled.")); 20 C.F.R. §§ 404.1517,
416.917 ("[i]f we arrange for [a consultative] examination or test, . .
. [w]e will also give the examiner any necessary background information
about your condition."). Accordingly, the ALJ's rejection of Dr.
Gelfand's opinion was proper.

### 3.  <u>Dr. Pensanti's April 27, 1994 Opinion</u>

In Dr. Pensanti's April 27, 1994 Evaluation Form For Mental
Disorders, Dr. Pensanti noted that she first examined Plaintiff on April
21, 1993 and had weekly visits with Plaintiff. (A.R. 208.) In
describing Plaintiff's intellectual functioning, she noted that
Plaintiff: "is forgetful, disoriented, unable to stay on purpose, [and]
could not function in a work environment at this time." (A.R. 209.) In
describing Plaintiff's affective status, she noted that Plaintiff: was
"very anxious at times," has "crying jags," has "no energy," and "[felt]
worthless [and] guilty." (*Id.*) In describing Plaintiff's reality
contact, Dr. Pensanti noted that Plaintiff: had "mood swings," "[burst]
into tears during [the] interview for no reason," was "confused at
times," was "sad [and] depressed," and "[felt] hopeless." (*Id.*) In
describing Plaintiff's social functioning, she noted that Plaintiff was
"withdrawn [and] isolated" and "unable to control [her] mood swings" and
was "unable to perform simple activities of daily living on a routine
basis." (A.R. 210.) She diagnosed Plaintiff with "Epstein Barr,"
anxiety, and depression, and noted that Plaintiff's condition was
"unimproved." (A.R. 211.) She stated that Plaintiff "needs psychiatric

[treatment], but cannot afford it" and noted that Plaintiff was taking Paxil. (*Id.*) She found that Plaintiff "cannot read contracts or complicated directions" and concluded that Plaintiff was "unable" to adapt to work or work-like situations. (A.R. 210-11.)

Defendant contends that Dr. Pensanti's April 27, 1994 evaluation pertained to the period previously adjudicated pursuant to Plaintiff's January 1994 application (A.R. 120-23), which was denied on June 13, 1994 (A.R. 104-07) and not appealed. (Joint Stip. at 4-5, citing Taylor v. Heckler, 765 F.2d 872, 876 (9th Cir. 1985)). In Taylor, the Ninth Circuit held that the Secretary correctly concluded that *res judicata* precluded the ALJ from reviewing the merits of the claimant's prior application. 765 F.2d at 876. *Cf.* Acquiescence Ruling 97-4(9)(*res judicata* should not apply to a subsequent claim involving a period that was not adjudicated in the previous claim). Here, as no appeal was taken from Plaintiff's prior application, the ALJ correctly found that the period prior to June 13, 1994 was precluded from further review under the doctrine of *res judicata* and, therefore, she was not required to specifically address Dr. Pensanti's April 27, 1994 evaluation in connection with Plaintiff's present claim. (A.R. 23-24.)

Further, to the extent Plaintiff contends that the ALJ erred by rejecting Dr. Pensanti's opinion that Plaintiff "could not function in a work environment [as of April 27, 1994]," and was "unable to adapt to work or work-like situations," her argument is unavailing. As noted above, the ALJ is not bound by a treating physician's opinion of disability. *See* 20 C.F.R. §§ 404.1527(d)(6)(e)(1), 416.927(d)(6)(e)(1); Nyman, 779 F.2d at 531. Moreover, because Plaintiff could have alleged

the ALJ's failure to address Dr. Pensanti's opinions in her first appeal to this Court, her attempt to allege it as an error at this juncture is improper. *See* <u>Cochran v. Chater</u>, 16 F. Supp. 2d 248, 251 (W.D.N.Y. 1997)(citing <u>Paterson-Leitch Co. Inv. V. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988)("The District Court on *de novo* review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.")

The Court notes that the ALJ properly relied upon substantial evidence in determining Plaintiff's residual functional capacity. For instance, Dr. Bailey, the non-examining expert who testified at the February 4, 1999 hearing, reviewed the medical evidence in the record and found that Plaintiff had less restrictive physical limitations than those found by Dr. Hall.[11] *See* <u>Morgan</u>, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it"); <u>Andrews</u>, 53 F.3d at 1041 ("Where the opinion of a claimant's treating physician is contradicted, and the opinion of a nontreating source is

---

11   The ALJ noted that she relied upon Dr. Bailey's findings and incorporated the medical evidence discussed in the February 13, 1999 decision, which addressed Dr. Bailey's findings in detail. (A.R. 389-90.)

Dr. Bailey reviewed the record and found that Plaintiff suffers from fibromyalgia, chronic fatigue syndrome, a history of asthma, and depression. (A.R. 55.) Dr. Bailey further found that Plaintiff: could sit, stand, and walk two hours at one time and six hours in an eight-hour workday; could lift up to 20 pounds frequently and 25 occasionally; could squat, crawl, and climb stars occasionally; could bend and reach frequently; and had total restrictions from activities involving unprotected heights, exposure to marked changes in temperature and humidity, and exposure to dust, fumes, and gases, and mild restrictions from activities involving being around moving machinery. (A.R. 55, 61-62, 382.)

based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."). The ALJ, factoring in a portion of Plaintiff's subjective limitations, found a slightly more restricted physical residual functional capacity finding. *See* 20 C.F.R. § 404.1545(a)(1) (a residual functional capacity assessment may include subjective symptoms); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)("In reaching his findings, [an ALJ] is entitled to draw inferences logically flowing from the evidence . . . [and] need not substitute the judgment of expert witnesses for his own"; citations omitted). With respect to Plaintiff's mental limitations, the ALJ relied upon the findings of Dr. Oskoolar, her treating psychiatrist, in part, and upon the findings of Dr. Reynaldo Abejuela, an examining psychiatrist, in determining Plaintiff's mental limitations.[12] (*See* A.R. 390, 392.) *See* Tonapetyan, 242 F.3d at 1149; Miller, 770 F.2d at 948.

Accordingly, Plaintiff's arguments that the ALJ failed to properly evaluate the opinions of Dr. Hall, Dr. Gelfand, and Dr. Pensanti are

---

12   In a February 13, 1997 report, Dr. Abejuela, a psychiatrist who examined Plaintiff at the request of the Commissioner, interviewed Plaintiff and performed a mental status examination. (A.R. 298-303.) Dr. Abejuela found that: Plaintiff's "mental status is basically intact"; she exhibited "no evidence of any cognitive impairment"; her "concentration, persistence, and pace are only minimally impaired"; and she can "understand, remember, and carry out simple instructions." (A.R. 302-03.)

In addition, as discussed further below, the ALJ's partially relied upon Dr. Oskoolar's June 12, 2001 opinion that Plaintiff would have difficulty working in stressful environments and was limited to performing "simple repetitive tasks in a habituated work setting which does not require hypervigilance or to be in charge of safety operations." (A.R. 392.)

1  unavailing.

2

3  **B.    The ALJ Properly Considered Plaintiff's Claimed Memory Problems.**

4

5     In   discussing   the   medical   evidence   regarding   Plaintiff's

6  limitations  arising  from  her  mental  impairment,  the  ALJ  stated,  in

7  pertinent part, as follows:

8

9     After  considering  the  record  in  its  entirety,  the

10    Administrative  Law  Judge  concludes  that  [Plaintiff's]

11    depression imposed mild restrictions in daily activities, more

12    than mild but less than moderate difficulties in maintaining

13    social functioning, and more than mild but less than moderate

14    difficulties  in  maintaining  concentration,  persistence  or

15    pace.  [Plaintiff] reported daily activities which included

16    doing housework when physically able, and occasionally cooking

17    and washing dishes (Ex 4F, 3F).  She was reportedly able to

18    tolerate    pleasant    social    interactions    and    basic

19    household/parenting duties, but was unable to handle financial

20    stress, conflict or pressure of any kind (Ex 1F pg 3).

21    [Plaintiff]  was  described  as  cooperative,  non-hostile,

22    pleasant and friendly.  Dr. Hall did report some difficulty

23    with  concentration  (Ex. 10F pg 1).  However,  in  the

24    consultative  psychiatric  evaluation  of  Dr.  Abejuela,

25    [Plaintiff's]  attention  and  concentration  appeared  to  be

26    intact, as were her short and long term memory (Ex 4F).  A

27    more  recent  mental  status  examination  done  in  June 2001

28    similarly reflected that [Plaintiff's] memory was no more than

22

mildly impaired and she was able to maintain a sustained level
of concentration (Ex 17F).  There are no documented episodes
of decompensation as a result of [Plaintiff's] depression.
Moreover, there is no evidence to establish the requirements
of Part C of the listing.

(A.R. 390.)

In defining Plaintiff's mental residual functional capacity, the
ALJ found that: "[Plaintiff] is limited to simple repetitive tasks in a
habituated work setting which does not require hypervigilance or to be
in charge of safety operations"; "is limited to an object oriented
environment not requiring intense interpersonal interactions"; and is
limited to performing work "at a moderate pace not requiring high
production, quota or rapid assembly line work."  (A.R. 396.)

Plaintiff contends that the ALJ improperly rejected her symptoms of
memory loss in connection with her chronic fatigue syndrome pursuant to
Social Security Ruling 99-2p.  (Joint Stip. at 5-6.)  Specifically,
Plaintiff contends that the ALJ improperly rejected:  Dr. Pensanti's
April 12, 1994 opinion that she was "forgetful, disoriented, [and]
unable to stay on purpose" (A.R. 209); Dr. Case's October 20, 2003
findings that she has "marked" limitations in the area of the "ability
to understand and remember very short and simple instructions" (A.R.
621); and Dr. Oskoolar's June 12, 2001 opinion that Plaintiff has memory
has a "mild" impairment (A.R. 606).  (Joint Stip. at 5.)

As noted above, the ALJ's failure to consider Dr. Pensanti's April

23

12, 1994 opinion was not error, as her opinion pertained to a period of time that previously had been adjudicated pursuant to Plaintiff's 1994 application. <u>Taylor</u>, 765 F.2d at 876.   Similarly, Dr. Pace's October 20, 2003 findings pertained to a period over four years following Plaintiff's March 31, 1999 last insured date, and therefore are not relevant to Plaintiff's instant claim. *See* <u>Tidwell v. Apfel</u>, 161 F.3d 599, 601 (9th Cir. 1999)(in finding that the claimant had no "severe" physical impairment during the relevant time period, the ALJ did not err by inadequately considering records from the claimant's treating physicians regarding the claimant's fibromyalgia when such records were dated three years after the claimant's last insured date).

Although Plaintiff contends that the ALJ improperly rejected Dr. Oskoolar's June 12, 2001 opinion regarding her memory problems, the ALJ's decision shows that the ALJ did, in part, rely upon this opinion in assessing the impact of Plaintiff's claimed memory problems on her residual functional capacity. (*See* A.R. 392 -- citing Ex 17F, which is Dr. Oskoolar's June 12, 2001 opinion.)   Specifically, Dr. Oskoolar indicated that Plaintiff's memory had only "mild" impairment, and she could "manage concrete/simple/low-stress/repetitive tasks in a relatively isolated environment with few co-workers." (A.R. 606.) Thus, Dr. Oskoolar's findings as to Plaintiff's memory impairment are, in fact, subsumed within the ALJ's mental residual functional capacity finding that Plaintiff is limited to simple, repetitive tasks in a habituated environment at a "moderate pace" with no "intense interpersonal interactions" or close or frequent interpersonal contact with the public. *See* <u>Macri</u>, 93 F.3d at 544 (ALJ did not improperly reject treating doctor's opinion, because the ALJ had discussed the

opinion and it was consistent with the ALJ's determination that the claimant was capable of performing a "wide range of light work").

Accordingly, Plaintiff's arguments as to the ALJ's purported errors in failing to consider adequately the opinions of Dr. Pensanti, Dr. Pace, and Dr. Oskoolar pertaining to her claimed memory problems are unavailing.

**CONCLUSION**

For all of the foregoing reasons, the Court finds that the Commissioner's decision is based on the correct application of the proper legal standards and is supported by substantial evidence, and that neither reversal of the ALJ's decision nor remand is warranted. Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 29, 2006

_____
/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE

25